**UNITED STATES of America**

**v.**

**Ray COWAN and Jake Jacobsen.**

**No. CR–6–74–3.**

United States District Court,
N. D. Texas,
San Angelo Division.

Sept. 6, 1974.

William F. Turman, Bob Gibbins, Austin, Tex., for Ray Cowan.

Arthur Mitchell, Stephen M. Orr, Austin, Tex., for Jake Jacobsen.

John L. Hill, Atty. Gen. of Tex., John W. Odam, Asst. Atty. Gen., Austin, Tex., amicus curiae.

## MEMORANDUM OPINION AND ORDER OVERRULING MOTION TO DISMISS

ROBERT M. HILL, District Judge.

The United States Attorney on August 29, 1974, filed and presented to this court a motion to dismiss the indictment in this case against the defendant Jake Jacobsen. The court has fully considered the motion and the government's support memorandum and is of the opinion that the motion should be denied.

On February 6, 1974, a federal grand jury returned a seven count indictment in the United States District Court for the Northern District of Texas, San Angelo Division, against Jake Jacobsen and Ray Cowan. In counts one through six of the indictment Jacobsen and Cowan were charged with conspiracy, embezzlement, and unlawfully defrauding the sum of $825,000 from a federally insured savings and loan association located in San Angelo, Texas. In count seven of the indictment Jacobsen alone was charged with making false declarations before the federal grand jury that returned the indictment. The maximum penalty on a guilty verdict on counts one through six is a fine of $60,000 and imprisonment for 30 years. The maximum penalty on a guilty verdict on count seven is a fine of $10,000 and imprisonment for 5 years. Although prosecution of the San Angelo case was initiated by the United States Attorney for the Northern District of Texas, who signed the indictment along with the foreman of the grand jury, this prosecution apparently is now being handled by the Department of Justice.[1]

---

Frank D. McCown, U. S. Dist. Atty., John Sweeney, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

1. This change was first made known to this court in the motion to dismiss. Paragraph one of the motion states that the case is being "handled by the Department of Justice." This court accepts this statement as true although the government's motion is

According to the government's motion, a federal grand jury on July 29, 1974, in the District of Columbia returned an indictment in the United States District Court charging Jacobsen with bribing a public official in violation of 18 U.S.C. § 201(f) and also charging Jacobsen as an unindicted co-conspirator under the conspiracy statute, 18 U.S.C. § 371. This bribery charge carries a maximum penalty of a fine of $10,000 and imprisonment for 2 years. Again, according to the government's motion to dismiss in this case, the prosecution of the Washington indictment is being handled by the Office of the Watergate Special Prosecutor.

However, over two months before the return of the Washington indictment, on May 21, 1974, the Office of the Watergate Special Prosecutor finalized a purported "plea bargain" with the defendant Jacobsen wherein the United States agreed to accept a guilty plea from Jacobsen to a one count charge of bribing a public official in violation of 18 U.S.C. § 201(f). The "plea bargain" also purported to "dispose of potential charges based on matters presently known to this office" (out of which the Washington indictment was later returned on July 29, 1974) and also to dispose of all of the charges against Jacobsen con-

tained in the San Angelo indictment. In addition to agreeing to plead guilty in the District of Columbia to the bribery charges, Jacobsen agreed, *inter alia*, to make "full and truthful disclosure" of all relevant information and documents in his possession and to testify in court regarding matters where he possessed relevant information. The agreement did not bar future prosecution of Jacobsen for perjury or "serious offenses" of which the Watergate Prosecutor was unaware.[2]

According to the government's motion, on August 7, 1974, Jacobsen entered a plea of guilty to the Washington indictment and the plea was accepted by the Honorable George L. Hart, Jr., United States District Judge, for the District of Columbia. Thereafter the motion to dismiss this case as to Jacobsen was filed on August 29, 1974.[3] When the motion to dismiss was presented, this court inquired of the United States Attorney if the government desired to offer any evidence or make any statement. The United States Attorney offered no evidence and only stated that the government would rely on the motion, the plea bargain agreement attached thereto, and the memorandum of authorities.

Rule 48(a) of the Federal Rules of Criminal Procedure provides for the dis-

---

signed and was presented and orally argued in open court by the Honorable Frank D. McCowan, United States Attorney for the Northern District of Texas, and a member of his staff. Up to this time no one in the Department of Justice has signed any pleadings or made any appearance in this court in connection with the prosecution of this cause.

2. This purported plea bargain is set out in a letter from Henry S. Ruth, Jr., Deputy Special Prosecutor, Watergate Special Prosecution Force, United States Department of Justice, to Charles McNelis, Attorney, May 21, 1974. Before the date of this letter this court had considered and heard oral arguments on several motions filed in this case by the defendants. At the time this letter was written this case was set for trial on July 8. However, the government filed a motion for continuance alleging that an essential witness had suffered a heart attack and was unavailable to testify. The government furnished the court with a statement

from the witness's physician certifying to his ill health, and based on such information the court continued this case and reset it for trial on September 23, 1974. The court again rescheduled its docket to accommodate the trial of this case in San Angelo on September 23, and it was not until the government's motion to dismiss was filed on August 29 that this court officially became aware that the government desired to dismiss the case as to Jacobsen.

3. On the same day the motion to dismiss was filed and presented to this court, the defendant Ray Cowan entered a plea of guilty to counts three and six of the indictment. This court has determined that there was a factual basis to support Cowan's plea of guilt and he has been adjudged guilty of the charges contained in counts three and six. The maximum penalty that this court could impose on these two counts is a fine of $20,000 and 10 years imprisonment.

missal of an indictment by the attorney for the government:

(a) *By Attorney for Government:* The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

The government argues in its memorandum that if a motion to dismiss an indictment duly returned and signed by the foreman of the grand jury and the United States Attorney is presented by the Attorney General or United States Attorney, then the court has no discretion except to grant the motion and dismiss the charges unless prejudice would result to the defendant.

Rule 48(a) specifically permits the dismissal of an indictment before trial "by leave of court." The issue before this court is the interpretation to be placed on the first sentence of rule 48(a). In determining this issue this court feels that it is necessary to examine both the law as it prevailed before the rule was enacted and the interpretations placed by the courts on the rule following its enactment.

At common law the rule prevailed in the federal courts that the United States Attorney or Attorney General had absolute control over criminal prosecutions and could dismiss or refuse to prosecute at his discretion, notwithstanding disapproval of a court. Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1868); United States v. Woody, 2 F.2d 262 (D.Mont.1924). *Contra,* United States v. Krakowitz, 52 F.Supp. 774, 784 (S.D.Ohio 1943). In *Woody* the defendant was charged with embezzlement and the reasons advanced by the United States attorney for dismissing the indictment were that the defendant had not been apprehended, that he was of a prominent pioneer family, was young, had divorced and remarried his wife, was studying law and that his career as a lawyer would be spoiled, that the government's losses had been reimbursed, and that the attorney general had sanctioned the dismissal. 2 F.2d at 262. Under the then prevailing rule, a court was powerless to prevent the dismissal because no leave of court was necessary. In *Woody* Judge Bourquin recognized the then prevailing rule that the district attorney had control over criminal prosecution, but in expressing doubt over the government's reasons advanced for the dismissal of the indictment he observed:

They [the reasons for dismissal] savor altogether too much of some variety of prestige and influence (family, friends, or money) that too often enables their possessors to violate the laws with impunity; whereas persons lacking them must suffer all the penalties. In brief, they and their like incite, if they do not justify, the too common reproach that criminal law is for none but the poor, friendless, and uninfluential; that in proportion to numbers the former are prosecuted, convicted, and punished in less degree than the latter, and their offenses are ignored, condoned, or pardoned in greater degree.

Than this belief in disparity in treatment of offenders, there is little that is more harmful to society, government, courts, law, and order; and, in so far as it is well founded, the basis of it is a pernicious evil, and abhorrent to justice. 2 F.2d at 262.

It was during the existence of this entrenched common law rule that rule 48(a) was spawned. The government urges that rule 48(a) did not change the common law rule other than to give the courts discretion to refuse to dismiss a criminal prosecution in those cases where a dismissal would harass or prejudice the rights of a defendant. This court agrees with the government that if this case is dismissed the defendant Jacobsen is not being harassed or prejudiced, but this court does not agree that its function under rule 48(a) is limited to prevention of harassment or prejudice. This court is of the opinion that the discretion vested in a court by

rule 48(a) is not so limited and that a court has a duty to determine on a motion of the government whether in the interest of justice the case should be dismissed.

The Advisory Committee on Criminal Rules recommended to the Supreme Court a rule that would permit prosecuting attorneys to file a dismissal of an indictment with a statement of the reasons therefore and providing that the prosecution would then terminate. The Supreme Court rejected this proposal and added the requirement in the first sentence of rule 48(a) that only by leave of court could the prosecution file a dismissal. 8A J. Moore, Federal Practice ¶ 48.02 [1] (2d ed. 1973); L. Orfield, 6 Criminal Procedure Under the Federal Rules, §§ 48:18–19, at 339–43 (1967); C. Wright, Federal Practice & Procedure § 812, at 304 (1969). For a history of the drafting of rule 48(a), preliminary drafts and comments thereon refer to L. Orfield, 6 Criminal Procedure Under the Federal Rules, §§ 48:17, 18.

That the first sentence of rule 48(a) vests in the district judge broad discretion in dismissing an indictment is evidenced by the Notes of the Advisory Committee on rule 48(a).[4] The Notes cite United States v. Woody, *supra*, as stating the common law rule which the first sentence of rule 48(a) changed. The Advisory Committee Notes indicate that rule 48(a), however, would have provided Judge Bourquin in *Woody* with the discretion to prevent the dismissal of the indictment. Fed.R.Crim.P. 48(a), Notes of Advisory Committee on Rules. Unless the first sentence of rule 48(a)

gives a district judge a broader range of discretion than the protection of a defendant, the result reached in *Woody* would be the same under the present rule. In *Woody* no exercise of discretion was necessary for the protection of the defendant as the prosecutor sought not to harass but rather to let the defendant "off the hook" because of who he was.[5]

The question of whether rule 48(a) is solely for the protection of the defendant or whether it reserves additional power to the district judge to determine whether to enter a dismissal has not previously been directly presented in the fifth circuit. United States v. Cox, 342 F.2d 167, 183 n.6 (5th Cir.), (en banc) (Brown, C. J., concurring) cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). However this circuit peripherally considered the scope and purpose of rule 48(a) by dicta in *Cox*.

In *Cox* the Honorable W. H. Cox, a United States District Judge, ordered the United States Attorney to prepare and sign an indictment requested by the federal grand jury. However, the United States Attorney received instructions from the then acting Attorney General not to sign the indictment. Judge Cox again ordered the United States Attorney to sign the indictment. Upon his refusal in open court Judge Cox held the United States Attorney in contempt. The government appealed the contempt order. The narrow holding of the majority in *Cox* is that under Fed.R.Crim. P. 7[6] a judge cannot require a United States Attorney to prepare and sign an indictment and if the United States At-

---

4. The prominent text writers whose works on rule 48(a) have been reviewed by this court implicitly or expressly conclude that a court is not limited in the exercise of its discretion solely to the protection of defendants in ruling on a motion to dismiss an indictment. *See* 8A J. Moore, Federal Practice, ¶ 48.01 et seq. (2d ed. 1973); L. Orfield, 6 Criminal Procedure Under the Federal Rules, Rule 48, at 321–71 (1967); 3 C. Wright, Federal Practice & Procedure § 812, at 304 (1969).

5. No intimation is intended that such was the government's motivation in seeking a dismis-

sal of the indictment in the case *sub judice*. The government's reasons for requesting a dismissal are treated in a separate part of this opinion.

6. Federal Rule of Criminal Procedure 7 in pertinent part provides:
   . . . (c) Nature and contents
   (1) In General. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government . . . Fed.R.Crim.P. 7.

torney refuses to sign an indictment there is no valid indictment. 342 F.2d at 171, 172. In *Cox* the majority stated that the purpose of rule 48(a) is to "prevent harassment of a defendant by charging, dismissing and recharging without placing a defendant in jeopardy." *Id.* at 171, *citing* Woodring v. United States, 311 F.3d 417 (8th Cir. 1963). However, *Woodring* involved the application of the *second* sentence of rule 48(a), which requires the consent of a defendant if a dismissal is filed during a trial. This court recognizes that the second sentence of the rule gives the court discretion exercisable for the protection of a defendant. The case *sub judice*, however, involves the *first* sentence of rule 48(a) which does not require the consent of the defendant for dismissal but requires *leave of court.* This court feels that the holding of the majority in *Cox* regarding the authority granted to a court under the first sentence of rule 48(a) is clearly dicta and further misrelies on the holding of *Woodring* which construes only the second sentence of the rule.

Other courts have construed rule 48(a). In Nesbitt v. United States, 249 F.2d 17 (6th Cir. 1957) the sixth circuit recognized that rule 48(a) delegates some discretion to the district judge in addition to discretion exercisable for the protection of a defendant. In *Nesbitt* the defendant was charged in an information with violations of the narcotics laws. On motion of the government the trial court permitted dismissal of the information and the defendant appealed from that order. In a per curiam opinion the sixth circuit stated " . . . we find that the action of the district court was an entirely proper exercise of the discretion implicitly delegated by Rule 48 of the Federal Rules of Criminal Procedure . . . " *Id.*

In United States v. Doe, 101 F.Supp. 609 (D.Conn.1951) Judge Hincks stated his notions of the principles that control a judge with respect to the discharge of his responsibility in making rulings under rule 48(a). In *Doe* the United States Attorney recommended dismissal of the entire case against a defendant whose case was pending on a plea of not guilty. Judge Hincks was of the opinion that in the exercise of sound discretion he could not dismiss an entire case against a defendant unless satisfied that the government lacked sufficient evidence to warrant a prosecution. *Id.* at 611, 612; *accord,* United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, 228 F.Supp. 483, 486 (S. D.N.Y.1964). *But see* United States v. Shanahan, 168 F.Supp. 225, 229 (S.D. Ind.1959) (court did not agree that the *only* justification for a dismissal is lack of sufficient evidence).

Judge Hincks observed in *Doe, supra,* that if the court has discretion in rule 48(a) matters it surely was entitled to factual information upon which the government recommendation is based. 101 F.Supp. at 611. He further observed that in the exercise of sound discretion the ruling judge must determine that a dismissal is compatable with the public interest.

Other district courts have stated that the bare assertion by the United States Attorney that the motion is made "in the interest of justice" when not implemented by explanatory facts is not sufficient to justify a court in permitting the dismissal of an indictment. United States v. Becker, 221 F.Supp. 950, 953 (W.D.Mo.1963); United States v. Shanahan, 168 F.Supp. 225, 229 (S.D. Ind.1959). The government must present the factual basis which justifies the dismissal so that the judge can exercise the sound judicial discretion with which he is charged under rule 48(a). As aptly stated by a district judge in Massachusetts in denying a motion to dismiss:

> [The] District Court in passing on a motion by the Government to dismiss is not a mere rubber stamp and must exercise independent discretion . . . . United States v. Bettinger Corp., 54 F.R.D. 40, 41 (D.Mass. 1971).

Judge Weinfeld of the Southern District of New York outlined the standard

to be applied in ruling on a government motion to dismiss under rule 48(a):

> The Rule contemplates public exposure of the reasons for the abandonment of an indictment . . . in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors. Accordingly, to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial and the real grounds upon which the application is based. United States of America v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, 228 F.Supp. 483, 486–487 (S. D.N.Y.1964).

Professor Moore observes with reference to rule 48(a):

> Rule 48(a) provides no criteria, not even the most general, for the exercise of judicial discretion in ruling on a motion to dismiss. Nor does the rule require the prosecutor to state his reasons for seeking a dismissal, though it is difficult to understand how a court can rule on the application without such a statement. 8A J. Moore, Federal Practice ¶ 48.02(2) (2d ed. 1973).

As possible reasons for dismissal of a prosecution Professor Moore suggests (1) insufficiency of proof; (2) death of a defendant; (3) incurable insanity or incompetency to stand trial; (4) serious and incurable physical disease or disability; (5) defendant a fugitive; (6) protection of government security against possible trial disclosures; (7) and the superseding of an indictment. *Id.*

In the government's memorandum of law in support of its motion to dismiss the indictment against defendant Jacobsen the government quotes from *Cox*:

Although as a member of the bar, the Attorney for the United States is an officer of the court, he is nevertheless, an executive official of the government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of discretionary powers of the attorneys of the United States in their control over criminal prosecutions. Memorandum of Government at 2, quoting 342 F.2d at 171.

The discretionary power referred to in the above quotation is the discretionary power to sign or refuse to sign an indictment [7] and not the discretionary power to dismiss a prosecution once that prosecution has been set in motion by a valid indictment, i. e. signed by the United States Attorney. This court does not question the United States Attorney's unrestricted discretion to sign or not sign an indictment. The case *sub judice* however is not such a case. Here the prosecution was initiated by an indictment bearing the signatures of the grand jury's foreman and the United States Attorney. As Judge Brown aptly stated in his specially concurring opinion in Cox:

> With it [a properly signed indictment] the whole prosecution has been started. And what was previously an unfettered discretionary right on the part of the executive not to initiate prosecution has now been set in motion and can be stopped only on the executive taking affirmative action for dismissal with all the uncertainties which F.R.Crim.P. 48(a) generates. 342 F.2d at 183 (Brown, C. J., specially concurring).[8]

---

7. A continuation of the paragraph quoted by the government makes it abundantly clear that the "discretionary power" under consideration was the power under rule 7 to sign or not sign an indictment.

. . . The provision of Rule 7 requiring the signature of the indictment by the attorney for the Government, is a recognition of the power of Government counsel to permit or not to permit the bringing of an indictment. If the attorney refused to sign, as he has the discretionary power of doing, we conclude that there is no valid indictment. 342 F.2d at 171.

8. Judge Brown apparently "fettered" what he previously considered "unfettered" discretion on the part of the United States Attor-

This case presents this court with the task of resolving those uncertainties. In so doing this court must conclude that if under rule 48(a) the government still has an absolute right to dismiss except where dismissal would be unfair to the defendant, the "innovation in the Rules of Criminal Procedure requiring an order of court before an indictment could be dismissed would be meaningless and without purpose." Parr v. United States, 225 F.2d 329, 337 (5th Cir. 1955) (Cameron, dissenting).

Although not directly raised by the government's motion and memorandum, the constitutionality of rule 48(a) has been considered by this court. After consideration this court concludes that application of rule 48(a) does not infringe the doctrine of separation of powers and is therefore constitutional. The requirement of leave of court contained in the rule was placed there by the United States Supreme Court. The separation of powers issue was before the Advisory Committee on Rules, and had the constitutionality of the present rule been an obstacle to the Supreme Court they could have adopted the Committee's recommendation omitting the requirement of leave of court. Further, Congress gave its specific approval in promulgating the rules.[9]

Though the constitutionality of rule 48(a) was not before the court in *Cox, supra,* the majority nevertheless, felt that the rule is constitutional. In this regard the court stated:

> If it were not for the discretionary power given to the United States Attorney to prevent an indictment by withholding his signature, there might be doubt as to the constitutionality of the requirement of Rule 48 for leave of court for a dismissal of a pending prosecution. 342 F.2d at 172.

In support of its motion to dismiss the government cites Smith v. United States, 375 F.2d 243 (5th Cir. 1967). *Smith* is not applicable to the instant case. *Smith* involved an action under the Federal Tort Claims Act by a proprietor of a business claiming that the government failed to arrest and prose-

---

ney to determine whether a prosecution is to be maintained or dismissed under rule 48(a). At the opening of his specially concurring opinion in *Cox* he states:

> I concur also that F.R.Crim.P. 48(a) vests the unfettered discretion in the District Attorney to determine whether a prosecution is to be maintained or dismissed. 342 F.2d at 182.

Judge Brown's footnote to his statement quoted in the text above raises further doubt as to whether, once a prosecution has begun the United States Attorney has unfettered discretion to dismiss the prosecution:

> The Court seems to be in virtual agreement that this rule is for the protection of the defendant alone. But the fact is we have not yet so held in a case directly presenting the question and in any event, viewed from the standpoint of the parties here, neither the District Attorney nor the Attorney General were required to assume that Rule 48(a) might not ultimately be construed as reserving considerable power to the District Judge himself in determining whether to enter a dismissal on the Government's motion. Actually, of course, the dissenters' concurrence on this is carefully hedged. 342 F.2d at 183–184 n. 6.

9. Judge Gerhard A. Gesell in overruling a government motion to dismiss an indictment charging perjury stated:

> Because Rule 48(a) of the Federal Rules of Criminal Procedure has been approved by Congress, review of the Court of the prosecutor's discretion is not a struggle for power between the Judicial and Executive branches, threatening the constitutional separation of powers. Instead, the Court is exercising appropriate review, prescribed as is commonly done by a co-equal branch of government—the Congress —over the faithful execution of the laws by the Executive . . . . The charge that he [the police lieutenant] testified falsely before the Grand Jury is not one that the Executive can abandon on the limited showing made. The Grand Jury is under the direction and control of the Court—the integrity of its processes must be preserved. No basis for dismissal has been shown. United States v. Cianciotti, Crim. No. 1795–72 (D.D.C., Oct. 27, 1972, rev'd without opinion, No. 72–2133, D. C.Cir. June 20, 1973). By local rule in the District of Columbia a Circuit Court's reversal without opinion is not precedent.

cute persons injuring plaintiff's business who objected to a verdict the plaintiff had rendered as a juror in a federal civil rights suit. The case dealt with a failure of the government attorney to arrest and prosecute. Rule 48(a) was not called into play in *Smith*. This court agrees that under the facts of *Smith* there is no liability on the part of the government in the exercise of its discretion not to seek an indictment.

The government also cites this court to Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375 (2d Cir. 1973). This case also is a pre-indictment case and likewise is not in point. Inmates of a New York correctional facility sought to mandamus state and federal officials to investigate and prosecute persons who allegedly had violated certain federal and state criminal statutes in connection with treatment of inmates during and following a prison uprising. The second circuit properly held that mandamus would not lie because it was with the discretion of the United States Attorney whether to investigate and initiate the prosecution of the alleged offenders. Rule 48(a) had no applicability to the facts and was not discussed in the court's opinion.

■ Based on the foregoing, this court finds no difficulty in reaching the conclusion that rule 48(a) grants to this court the discretion to determine whether the government's motion to dismiss the indictment as to Jacobsen should be sustained. The remaining issue to be resolved is whether the reasons advanced by the government are such that this court in the exercise of its sound discretion should grant the motion and dismiss the indictment as to Jacobsen.

■■ The only reason advanced by the government in its motion to dismiss the indictment in this case against Jacobsen is that if it is not dismissed Jacobsen will not be bound to testify in the District of Columbia case or in any other case in which he is called as a witness, and that "the best interest of justice will be served by disposing of the charges . . ." At the time this motion was presented in open court the United States Attorney was asked whether he wished to make any statement or present any evidence. He offered no evidence, and stated only that he would rely on the authorities in the government's brief and its motion to dismiss. Consequently, this court has no factual basis on which to grant a dismissal. The bare assertion in the government's motion that "the best interest of justice" will be served is not sufficient to justify a dismissal. United States v. Becker, supra; United States v. Shanahan, supra. Moreover, this court is unable to perceive how the best interest of justice could be served by dismissing serious charges with a potential penalty of 35 years imprisonment and a $70,000 fine in exchange for a guilty plea in an unrelated case carrying a maximum penalty of 2 years and a $10,000 fine.[10] This is especially so in view of the fact that there has been *no* showing made that Jacobsen's testimony

---

10. In this connection the purported plea bargain reserves to the government the right to prosecute Jacobsen for "other serious crimes" and for perjury. This court is hard put to find a "more serious" federal crime than that charged against Jacobsen in this case of being instrumental in the embezzlement of $825,000 from a federally insured savings and loan association. Also, if the government attorney who entered into the plea bargain feels so strongly that perjury is a crime that should be excepted from immunization, it seems unusual, to say the very least, that he would agree to a dismissal of the perjury charge (Count 7) in this case against Jacobsen. Perjury is no less serious in Texas than it is in Washington. Further, perjury before a grand jury is a crime that cannot be treated lightly by a court in ruling on a government motion to dismiss. As stated in United States v. Shanahan, 168 F.Supp. 225, 226 (S.D.Ind. 1959):

Such an offense strikes at the very trunk nerve of our system of administering justice. It is not a minor offense, but one possessed with grave consequences. A motion for leave to dismiss a grand jury indictment charging such an offense cannot be taken lightly by the Court.

is vital or essential to the successful prosecution of the District of Columbia case or any other case.

It should also be noted that a joint investigation of the alleged violations in this case was made by the Texas Savings & Loan Department and the Federal Home Loan Bank Board. The investigatory material developed by these state and federal agencies was turned over to the federal officials with the understanding that the federal government would initiate and pursue appropriate prosecution. The State of Texas has informed this court that:

> Such relinquishment of such investigatory data would not have taken place had the State of Texas not believed that the ends of justice would be fully pursued on the basis of the facts in *this* case. No further action has been taken to date by state officials, in the belief that appropriate federal action was being fully pursued. Motion of State of Texas to file Amicus Curiae Brief at 1–2.

In the opinion of the court these facts alone are sufficient grounds to conclude that the interest of justice would not be served by a dismissal of this case.

In its brief the government urges that even if the district court can in its discretion deny a government motion to dismiss that this court could not thereafter mandamus or compel the United States Attorney to prosecute the case. Brief of Government at 3, citing United States v. Cox, supra, 342 F.2d at 179, and United States v. Greater Blouse & Neckwear, supra. The dissent in *Cox*, however, stated:

> It may be that the court, in the interest of justice, may require a showing of good faith, and a statement of some

rational basis for dismissal. In the unlikely event of bad faith or irrational action, not here present, it may be that the court could appoint counsel to prosecute the case. In brief, the court may have the same inherent power to administer justice to ṭḥe government as it does the defendant. 342 F.2d at 179.[11]

■ The court in *Greater Blouse* recognized that a factor that must be considered is that it would be without power to compel prosecution of an indictment. 228 F.Supp. at 489–490. In considering this factor this court must assume that, absent compelling circumstances, if there is sufficient evidence to go forward with a prosecution appropriate action will be taken by the United States Attorney to protect and vindicate the public interest. Indeed, every indication is that the United States will go forward in this case upon the court's overruling the motion to dismiss. The government investigated the case against Jacobsen, sought and obtained an indictment against him, and until the present, has vigorously pursued this prosecution.[12]

■ As an alternative reason compelling dismissal of the indictment the government argues that Jacobsen's plea in the District of Columbia case was pursuant to a plea bargaining agreement and that therefore its promise to Jacobsen to dismiss this case must be fulfilled. In support of this proposition the government cites Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Johnson v. Beto, 466 F.2d 478 (5th Cir. 1972); and Gallegos v. United States, 466 F.2d 740 (5th Cir. 1972). An examination of these cases quickly reveals that they are

11. For an exhaustive discussion of the power of courts to appoint special prosecutors refer to comment, The Special Prosecutor in the Federal System. A Proposal, 11 Am. Crim.L.Rev. 578 (1973).

12. The government has opposed most of the pre-trial motions of defendant Jacobsen through oral argument or briefs, or both. These motions include: (1) Motion to transfer; (2) motion to sever indictment; (3) motion to dismiss the indictment as multiplicitous; (4) motion to suppress; (5) motion to dismiss due to press leaks; and (6) motion to dismiss for lack of speedy trial.

not applicable here. These do not stand for the proposition that a *court* must fulfill a bargain, as the government intimates. Rather, they involve situations where the government made a bargain with a defendant in a criminal case and subsequently the *government* reneged on its part of the bargain. In such instances certainly the prosecution must fulfill its promise. As stated by Judge Goldberg in a well reasoned opinion in *Gallegos*

> The cited cases [Santobello and Johnson] teach that if a plea bargain induced a guilty plea and the government's promise to take some course of action in return is not fulfilled, the person convicted is entitled to relief. 466 F.2d at 741.

Judge Goldberg further stated:

> Petitioner questions whether the *court* is not bound by a bargain struck between the government and the defendant in a criminal case. We do not find that this is the law; rather, the cases reveal that such a bargain is either specifically enforceable between the *parties to the agreement* or the plea is void. 466 F.2d at 741 (emphasis original).

Just as a prosecutor does not have the power to promise that a given sentence would be imposed, he could not promise that the court would dismiss the indictment under rule 48(a). A conviction based on such a plea is open to collateral attack. *Johnson*, supra, 466 F.2d at 479 *citing* Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

■ The government in its bargain with Jacobsen made a promise to Jacobsen that it could not guarantee. It could have promised to move for a dismissal of this case under rule 48(a), but it could not guarantee a dismissal. This court was not a party to the bargain and is not bound by it.

In conclusion, in the exercise of the discretion vested in this court pursuant to rule 48(a), this court is of the opinion that the government's motion to dismiss the indictment against the defendant Jake Jacobsen should be overruled.

It is so ordered.